and counsel for the petitioners here in person, and do we have counsel for the respondent on the phone? Yes, I'm here. Thank you so much for letting me appear, Dr. Long. All right. And Ms. Foden? Good morning, Your Honors. Mary Foden for the petitioners. I would like to use my time this morning on this immigration petition for review to focus on the legal error that the Board committed when it ignored Al-Rafi, Lopez 1 and 2, and its own precedent under a matter of MRA. All of those cases teach us that upon consideration of a motion to reopen based on lack of notice, the subject of inquiry is whether the immigration respondent has actually received notice. And the petitioners submitted three forms of evidence directly to this point. The first piece of evidence is the fact that the mailer of the hearing was There's no real dispute as to whether she got notice. She did not. The mailings were returned to the Immigration Court. So the question is whether, I think as the Board put it, she should be charged with receipt of the documents and under the circumstances, including actually getting personal service initially, whether in its discretion the Board reasonably denied the motion to reopen. And we submit that that's improper, Your Honor, because she did not receive the notice and the mailer sent back said that it was undeliverable. There are multiple reasons why a document may not be delivered to the respondent. And in this case, they were mailed to her at the address that she had provided, correct? That is correct, yes. But the cases state that the respondent may file a motion at any time indicating that she did not actually receive the notice. So the question is actual receipt, not whether the order was properly entered at the time, but whether the respondent has the basis under law to reopen her case because it was not actually delivered. Right, but even assuming she did not get the documents, why was it an abuse for the Board to say no under all these circumstances? In this case, the respondent offered further reasoning about why she had not, for example, appeared at the first hearing. She stated that she did not speak the language as it was explained to her for which explained her initial failure to appear. And that is something that distinguishes this from the case that was in Banhot, that the Court heard a similar matter on a previous failure to appear. In this case, the respondent stated that she did not understand that she had been She was given the notice and it was in English. The law does not require that it be given in native language. I mean, she obviously would know it was important and seek someone who could explain it to her. I mean, that's the reasoning of the agency anyway. Why isn't that something that it was entitled to consider as part of the totality of the circumstances? Your Honor, when a document is issued to a respondent, it's supposed to be, if it is in a specific language and served to her in person, in a language, it should be in her native language. Sotomayor, that's not the law, is it? Well, it states that it does not refute the validity of the NTA. And we're not arguing that the NTA was invalid. We're simply saying that that was the reason why, to explain why she did not originally appear before the Court. And to show her good faith that she had not intentionally failed to appear, she offered that as an explanation as to why she had not originally appeared. So we were --" I think that the Court was conflating whether we were actually refuting the validity of the NTA. We were not. The respondent was offering a reason why she had failed to appear originally. Sotomayor, this is a use of discretionary view. So we have to find that there was some legal error in the agency's action, or that it did not act within its discretion. And I guess what we're saying to you is where she gets notice in hand of a duty to appear, albeit not in her native language. She apparently does not find out what's in the document she's been given. She gets notice, then, at the address she provides. And do I have it right? Do they send something once or is it twice to that address? At least twice. Twice, right, to that location. She provides, then, an affidavit saying that she's living at a different location, but she doesn't say when that happened or whatever. On the totality of the circumstances, why doesn't the agency have the discretion to say, no, we're not reopening in these circumstances? The Respondent did not state that or the Petitioner did not state that she had moved to a different address. She stated that at the time of these removal proceedings, she was living at that address. And she stated that she had received mail at that address, and she had no reason to believe that she would not receive that mail. So our submission is that it's improper. Sotomayor, her affidavit says that she now lives at a different address, but it doesn't state when she moved. And I didn't think it ever explicitly states that she was living at Benham Avenue around the dates the notice was sent. Isn't that what the record shows? No. She stated that she had lived at that address, and that was in paragraph 6 of the A.R. It's page 49, that she had lived at that property for several months. Right. That's a little vague as compared to when the notices went out, though. Okay. It says what it says. So she stated that she was living at that address and that she had no reason to believe that she would not receive postcards. But my point is the agency looking at it. It says we gave you notice in hand. We sent you two notices to the address you gave us. These explanations that, well, that's not where you were living, is not good enough to reopen. We don't find, in essence, that you responded in good faith to your situation when you were released. So the Respondent stated that she was living at that address, and the fact that these refutes delivery, which is the subject of the motion to reopen. You're not suggesting the agency knew where to send them. No. We're stating that the address was correct and it was not received. And the motion to reopen, the subject of the motion to reopen, is whether the notice was actually received by the Respondent. And since it was not received and the court file actually shows evidence that it was not received, how can she not have a viable motion to reopen before the court when the subject is whether she did not receive it and the court file demonstrates primary evidence that she did not receive that motion? And there was other further corroborating evidence in the fact of her conduct. I mean, she had voluntarily appeared to ICE. She was faithfully checking in. The moment that she — She waited 10 years, ultimately, right? Because she did not receive a notice, either of the hearing or of her order of removal. She had in hand a document that she says she couldn't understand because it wasn't in Portuguese. And she never bothered, I guess, to have that translated. But it's ultimately 10 years before she's back, right? That is true, Your Honor, and the regulations do not put a time limitation specifically because when there is a lack of notice, the Respondent is not informed of the hearing or of her order of removal. There is no time limitation placed on when she can reopen for that reason because we do not want to penalize someone who may not receive notice of her proceeding. Thank you. We have some time for rebuttal. Ms. Fitzgerald-Sambu, you're on. I'll let you know when you're near — when the yellow line goes on. Okay, great. Thank you so much. Good morning, Your Honors. May it please the Court. Elizabeth Fitzgerald-Sambu on behalf of Respondent. This is an immigration case where, as Your Honors pointed out, this individual was personally served with notice, essentially, that she was being placed into removal proceedings. And the notice to appear gave her the specific time and date and location of the hearing where she was supposed to appear. As Your Honors noted, this Court held in Lopez that there's no requirement that the notice to appear be translated into English, so therefore that was sufficient written notice that she was supposed to show up at her removal proceedings. And although she claims that she didn't understand the Spanish language, the record actually indicates that her daughter's notice to appear was personally served to her and that the failure to appear warnings were provided in Portuguese. That's the last page of the administrative record. So, here, she's now claiming 13 years later when she needed a stay of removal after, you know, a decade had passed and then the Department of Homeland Security took steps to begin at least checking up on her and possibly trying to have her returned to her home country. Then, at that time, she realized she needed a stay of removal. The record indicates that she somehow got a stay of removal, perhaps from the Department of Homeland Security, and then when that stay expires, she then filed this motion to rescind her in absentia removal order, and essentially, which grants an automatic stay again. So, here, these are all things that the agency considered in determining whether her removal order should be rescinded, and that's a proper thing for the agency to consider under both this Court's case law and matter of MRA, where the Board set forth what factors it considers in a regular mail-type case as this case is. And I think one issue that has become confused is that this Court has case law in the Lopez case and the note, et cetera, that were all decided before matter of MRA. So, in this Court's case law, it said that the focus is on receipts because the statute does provide or does include the word receipt. However, in matter of MRA, the Board held essentially that the notice requirement should be focused on effective service and essentially legal or constructive notice and not necessarily whether the alien actually received it. And this Court also does have case law supporting that. So, Petitioner focuses or claims that matter of MRA also said or held that actual notice is the legal standard, but that's actually not correct. And even this Court in Lopez stated that there are other factors that the agency is permitted to consider. So, here, essentially, in light of personal service of the notice to appear, et cetera, and the other circumstantial evidence that the agency considered, we would, if there are no questions, rest on the arguments we made in our brief and ask this Court to deny  Thank you. General Sambu, at least to my ear, it's not always easy to hear you. So, let me ask you to explain again what you're urging us to make of the fact that the daughter's certificate of service states that there was oral notice in Portuguese. Did I hear you say something about that? Yes. I'm so sorry. What is your argument when the Petitioner's own notice says that she was given the oral notice in Spanish? What are you asking us to infer? Well, essentially, the statute only requires written notice. So, the notice to appear in English constitutes valid written notice of that first hearing. So, the reason why I brought up the Portuguese language aspect of it is just it goes towards her due diligence, the fact that she knew that she was in removal proceedings, knew that she had the obligation to update her address, and then waited 13 years to file this motion, which goes towards the agency's consideration of factors of whether to, you know, rebut the presumption that she had legal notice. So, there the agency considered the fact that she, you know, had notice. She was personally served with this notice to appear. She knew that she had to update her address. She knew she was being put into removal proceedings, yet she waited 13 years. And in her motion, she did not specify, for example, what immigration relief she would apply for if it was rescinded and reopened, or even back when she first crossed the border and received her notice to appear. She didn't explain, you know, why she would have had an incentive to appear. She claimed that she... I just wanted to be clear. You're not urging on us that because the daughter's certificate says notice was given in Portuguese that the mother got the notice in Portuguese. You're not arguing that? Oh, actually, no. Sorry for the confusion. But the mother was personally served with the daughter's notice to appear. So, yes, I am arguing that the mother received the notice in Spanish. That wasn't an agency finding ever, was it? No, but I'm just pointing it out because it is... They got notice in Portuguese? Correct. It's just in the record, so... How come you reached that conclusion? Well, Your Honor, it just goes to the agency considering the record as a whole. And part of the agency's finding was the fact that she had this... You know, she knew of her obligation to update her address. She knew that she was in removal proceedings. So, essentially, it's just part of the evidence that the agency considered in her state of mind whether she was essentially on notice to show up at her first removal hearing and knew that she was in removal proceedings. So, although the agency doesn't... I don't believe the agency explicitly points out that fact. It still, at least, is what the agency considered when they considered the record as a whole. So, that's why I bring it up. All right, thank you. We'll hear the rebuttal. Thank you. Your Honors, the government continues to emphasize that the respondent should have updated her address. And that's not in the record here. What she stated was that she was at that address, that she had received other mail there. And so, the question is whether the returned mailers, her statement, and the other corroborating evidence of her conduct upon learning of the order falls under this Court's precedent under Alrathie, Lopez 1, 2, and matter of MRA. The BIA cites to matter of GYR, which goes before all of these cases. And the petitioner submits that she's held to a higher standard than what is required under law and precedent, that she's being held to prove documentary evidence, that she lived there by the immigration judge and by the BIA. None of that is set forth in the teachings that this Court has provided and that the BIA has provided. It's not under the statute. The question is whether she received these documents. And although there is a summary, it's only a summary decision, non-precedential, admittedly. There was a case before this Court, Turner v. Holder, in which the Court stated that the notices, the two notices that were returned as undeliverable, and the record establishes that that petitioner had not received the notice, and that it supported the determination that, although the notice was properly mailed, it refuted receipt of it. And so I — the petitioners urged the Court to focus on the receipt, which is already contained in the court file. And essentially, if you have a — if you have a case where a petitioner is not aware that she was ordered to appear for a hearing and that she was ordered removed, and she thereafter properly files a motion to reopen that is not subject to any kind of time limitation, even when there is notice in the court file that the notices were not delivered, under the government's position, the respondent — the petitioner would essentially never be able to reopen their case. Thank you. Thank you. We'll reserve decision. And, Ms. Fitzgerald-Samuel, you're welcome to sign off, or you're welcome to stay on.